No. 100,766

STATE OF KANSAS, *Appellee*, v. FRANK BURNETT, *Appellant*.

(301 P.3d 698)

Opinion filed May 31, 2013.

Benjamin J. Fisher, of Hutchinson, argued the cause, and Shawn P. Lautz, of Hutchinson, was on the brief for appellant.

Stephen D. Maxwell, senior assistant district attorney, argued the cause, and Keith E. Schroeder, district attorney, and Stephen Six, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Frank Burnett seeks review of a Court of Appeals decision affirming his conviction for an aggravated weapons violation. He claims his statutory speedy trial rights were violated because he was not brought to trial within 180 days of his request to expedite his case under the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq. The UMDDA provides an intrastate process for prisoners in Kansas penal or correctional institutions to request final disposition of other criminal charges pending in the state. Once the prisoner properly initiates disposition of the other charges under the UMDDA, the State's failure to bring those charges to trial within 180 days deprives the district court of jurisdiction, subject to certain statutory exceptions. K.S.A. 22-4303.

We hold that the Court of Appeals incorrectly determined there were procedural bars precluding review of Burnett's case. We further hold that the district court erred when it determined the UMDDA was inapplicable to Burnett's pending charges. Based on this and the lack of any claim that continuances tolled the running of the 180-day period, we hold the district court lost jurisdiction to try, convict, or sentence Burnett. Accordingly, we reverse the Court of Appeals decision affirming the district court. Burnett's conviction is reversed and his sentence vacated.

## FACTUAL AND PROCEDURAL BACKGROUND

The timeline is important to understanding the speedy trial issues. On September 7, 2006, Burnett was charged in Reno County

for an aggravated weapons violation, domestic battery, battery, fleeing and eluding police, no proof of insurance, and illegal display of a license plate. About 2 months after the Reno County charges were filed, Burnett was sentenced to 44 months in prison in an unrelated case in McPherson County (McPherson Case I). The sentencing journal entry in that case states that the district court ordered "the Sheriff or a designee transport [Burnett] *to the custody of the Secretary of Corrections.*" (Emphasis added.) Although Burnett began serving that sentence on November 27, 2006, he remained in the McPherson County Jail because he had another, unrelated, criminal case (McPherson Case II) pending there.

About 3 months after Burnett began serving the McPherson Case I sentence in the McPherson County Jail, Burnett filed with the Reno County District Court a pro se "[R]equest for Mandatory Disposition of Detainers Act to be Imposed." The motion cited the UMDDA, and there is no dispute that it is dated February 7, 2007. In it, Burnett requested the resolution within 180 days of all indictments, information, or complaints pending against him in Reno County. He certified that he sent a copy of his request to the Reno County district attorney, the Reno County District Court clerk, and the Kansas secretary of corrections. He explained in his request that he was sending a copy to the secretary—rather than a prison warden—because he was not being held at a Kansas Department of Corrections (KDOC) facility at that time. Burnett was transferred from the McPherson County Jail to a KDOC facility on March 12, 2007, 5 weeks after filing his UMDDA request.

Following multiple continuances for the preliminary hearing on the Reno County charges, Burnett was bound over for trial on May 14, 2007. A jury trial was scheduled for August 13, 2007. But on August 9, 2007, Burnett filed a motion to dismiss those charges, claiming he was not brought to trial within 180 days of his UMDDA request as specified in K.S.A. 22-4303. There were 183 days between February 7, 2007, when Burnett filed his request with the Reno County District Court, and August 9, 2007.

In its opposition to Burnett's motion, the State conceded that Burnett filed his request on February 7, 2007, but claimed the motion to dismiss should be denied because: (1) Burnett was in

the McPherson County Jail at the time of his request and was not being held by or serving a sentence with KDOC; (2) Burnett's request was not accompanied by a certificate from KDOC or any other facility certifying the time commitment on his sentence; and (3) Burnett was not under a detainer when he filed his request, and one was not placed until May 7, 2007. The State argued these facts rendered the UMDDA inapplicable. Notably, the State did not claim any of the continuances granted in the Reno County proceedings tolled the 180-day period. See K.S.A. 22-4303 ("the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for him to be heard").

During the hearing on the motion to dismiss, Burnett admitted into evidence the sentencing journal entry from McPherson Case I, which reflected that he began serving a 44-month sentence with KDOC on November 27, 2006. The State mainly argued that Burnett's incarceration in the McPherson County Jail did not count for purposes of calculating the 180 days. The district court denied the motion after finding the UMDDA did not apply because Burnett had not been serving a sentence with KDOC at the time he filed his request. Burnett was later convicted of the aggravated weapons violation and sentenced to 17 months in prison with a 12-month postrelease supervision term.

Burnett challenged the denial of his motion to dismiss on appeal. In its ruling, the Court of Appeals took a different analytical approach than the district court by determining that the issue before it was whether the UMDDA's 180-day speedy trial mandate begins to run before authorities physically transport an inmate to a KDOC facility. It characterized this issue as one of first impression, but ultimately held it could not reach that issue due to procedural deficiencies in Burnett's request. *State v. Burnett*, No. 100,766, 2009 WL 5206220, *2-3 (Kan. App. 2009) (unpublished opinion).

Specifically, the panel concluded there was no evidence establishing: (1) when the Reno County district attorney actually received Burnett's request and certification; (2) that Burnett delivered the request to a McPherson County jail official to certify the terms of his incarceration; or (3) that Burnett sent his request by

registered or certified mail. The panel held that Burnett had the responsibility to provide a record sufficient to ascertain these procedural mileposts in order to demonstrate error. On this basis, it affirmed the district court. *Burnett*, 2009 WL 5206220, at *2-3.

Burnett sought review from this court, which we granted. Our jurisdiction arises under K.S.A. 20-3018(b) (review of a Court of Appeals decision).

## ANALYSIS

### Standard of Review

Whether a defendant's statutory right to a speedy trial was violated is a question of law subject to de novo review. *State v. Breedlove*, 295 Kan. 481, 486, 286 P.3d 1123 (2012); see also *State v. Angelo*, 287 Kan. 262, 268, 197 P.3d 337 (2008) (unlimited review over question regarding application of detainer statute). To resolve the question presented we must interpret and apply the UMDDA. Statutory interpretation and the determination of jurisdiction involve questions of law over which this court's scope of review is unlimited. *State v. Alonzo*, 296 Kan. 1052, 297 P.3d 300, 302 (2013).

Additionally, we note this court construes criminal statutes strictly in favor of the defendant, and any reasonable doubt about a statute's meaning must be decided in favor of the accused. But this is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative intent. *State v. Marks*, 297 Kan. 131, 298 P.3d 1102, 1114 (2013).

### Discussion

We begin by examining in some detail the relevant portions of the UMDDA. K.S.A. 22-4301 provides:

"(a) Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information or complaint pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

"(b) The warden, superintendent or other official having custody of prisoners shall promptly inform each prisoner in writing of the source and nature of any

untried indictment, information or complaint against him of which the warden, superintendent or other official has knowledge or notice, and of his right to make a request for final disposition thereof.

"(c) Failure of the warden, superintendent or other official to inform a prisoner, as required by this section, within one (1) year after a detainer has been filed at the institution shall entitle him to a final dismissal of the indictment, information or complaint with prejudice."

### K.S.A. 22-4302 provides:

"The request shall be delivered to the warden, superintendent or other officials having custody of the prisoner, who shall forthwith:

"(a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of probation and parole relating to the prisoner;

"(b) for crimes committed on or after July 1, 1993, certify the length of time served on the prison portion of the sentence, any good time earned and the projected release date for the commencement of the postrelease supervision term; and

"(c) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed."

### K.S.A. 22-4303 provides:

"Within one hundred eighty (180) days after the receipt of the request and certificate by the court and county attorney or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present, the indictment, information or complaint shall be brought to trial; but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for him to be heard. If, after such a request, the indictment, information or complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information or complaint be of any further force or effect, and the court shall dismiss it with prejudice."

The UMDDA was adopted by our legislature in 1959 under what was then K.S.A. 62-2901 (Corrick 1964). L. 1959, ch. 362. That statute was repealed in 1970 and re-codified as K.S.A. 22-4301, *et seq.* L. 1970, ch. 129, sec. 22-4301. *Hayes v. State*, 210 Kan. 231, 232, 499 P.2d 515 (1972). The UMDDA provides the manner in which an inmate of a Kansas penal or correctional institution may

require disposition of any criminal charges pending within the state. *State v. Brooks*, 206 Kan. 418, 421, 479 P.2d. 893 (1971).

Its aim is to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges, and it seeks to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time. *State v. Ellis*, 208 Kan. 59, 61, 490 P.2d 364 (1971); see also *State v. Dolack*, 216 Kan. 622, 634, 533 P.2d 1282 (1975) (UMDDA permits prisoner to obtain speedy trial guaranteed by Kansas Constitution as legislatively defined); *State v. Stanphill*, 206 Kan. 612, 615-16, 481 P.2d 998 (1971) (UMDDA founded on legislative policy designed to protect prisoners from the disabilities faced during pending complaint); *State v. Goetz*, 187 Kan. 117, 121, 353 P.2d 816 1960) (legislative intent was to prevent delays and expedite proceedings within reasonable amount of time).

This statutory right is founded on legislative policy, as distinguished from constitutional grounds. *Stanphill*, 206 Kan. at 616. Under the UMDDA, "the passage of the statutory period . . . must be treated as conclusive of undue delay if all other conditions are met." 206 Kan. at 616. But substantial compliance with the UMDDA is sufficient to invoke its protections. *Sweat v. Darr*, 235 Kan. 570, 575, 684 P.2d 347 (1984); *Ekis v. Darr*, 217 Kan. 817, 822-823, 539 P.2d 16 (1975).

Based on the approach taken by the panel, there are three preliminary questions to answer regarding procedural matters before addressing the merits of Burnett's speedy trial claim: (1) Must Burnett prove when the district attorney actually received his request and certification? (2) Was he required to send his request to McPherson County jail officials rather than KDOC? and (3) Was Burnett required to send his request by registered or certified mail? And because we answer each question in Burnett's favor, we will move to the substantive question whether the district court correctly found the UMDDA inapplicable.

*District Attorney's Receipt of Burnett's Request and Certification*

The Court of Appeals first held that Burnett's UMDDA request was fatally deficient because he failed to prove when the district attorney received both the request and the certification—an important date because it marks the point at which the 180-day period begins to run under K.S.A. 22-4303. *Burnett*, 2009 WL 5206220, at *2. The panel erred in its analysis.

K.S.A. 22-4301(a) requires an incarcerated person to affirmatively request final disposition of pending charges in writing and to address that request to the county attorney and court where the charges are pending. K.S.A. 22-4302 also requires that the incarcerated person deliver a copy of the request to the official having custody of that person. It is undisputed Burnett filed his request with the district court on February 7, 2007—the request is file stamped by the Reno County District Court clerk as being received on that date. The record is also clear that the district attorney received that request. This is most obvious from the State's response opposing Burnett's motion to dismiss, when it argued that its copy of the request was not accompanied by a certificate from KDOC, in addition to the absence of any argument that the district attorney did not receive the request. And there is no dispute that Burnett addressed his request to the secretary of KDOC.

The mystery that seems to have distracted the panel was why there was no certification provided to the district court and district attorney from an official having custody of Burnett as specified in K.S.A. 22-4302. In holding that Burnett failed to prove when the district attorney received the certification, the panel did not consider who was obligated to supply it, even though the panel held Burnett accountable for that omission.

We have held that the burden to send the certification to the district court and county attorney shifts to prison officials once the facts establish that the prisoner properly invoked the UMDDA. *Pierson v. State*, 210 Kan. 367, 374, 502 P.2d 721 (1972). And K.S.A. 22-4302(c) specifies "the warden, superintendent or other officials having custody of the prisoner" are obligated to "forth-

with" send the district court and county attorney the request and certification. Accordingly, if there was a deficiency in the execution of those statutory responsibilities, that failure is not attributable to Burnett, nor should it prejudice his ability to invoke the statute. The UMDDA is the statutory grant to an accused person of a right to which that person "cannot be deprived by the laches of public officials." 210 Kan. at 371; *Goetz*, 187 Kan. at 119.

In *Pierson*, it was undisputed that the prisoner had signed a written request for final disposition of his detainer, which was addressed to the appropriate court and county attorney, and that he delivered the request to the records clerk of the penitentiary where he was incarcerated. The district court found substantial competent evidence existed that prison officials had prepared and sent the required documents and that they were received. We agreed substantial competent evidence supported those findings and held that the prisoner was entitled to dismissal when he was not tried within 180 days of his request. In so holding, we explained that once the prisoner complied with the UMDDA, the burden of properly delivering that request along with the certification was on the officials having custody of the prisoner. 210 Kan. at 373-74.

### KDOC Custody

The UMDDA requires that any request must be delivered to the warden, superintendent, or other officials having *custody* of the prisoner. K.S.A. 22-4302. The Court of Appeals found there was no evidence Burnett delivered his request to any McPherson County Jail official, which necessarily assumes Burnett was not in KDOC custody for UMDDA purposes at the time he submitted his request. *Burnett*, 2009 WL 5206220, at *2. We hold that assumption is not supportable.

The UMDDA does not define "custody," but various definitions and interpretations supply guidance. For example, under K.S.A. 22-2202, the definitions section of the criminal procedure code, the term is defined as "the restraint of a person pursuant to an arrest or the order of a court or magistrate." Similarly, the criminal statute regarding escape from custody defines "custody" as "arrest; detention in a facility for holding persons charged with or convicted

of crimes." K.S.A. 2012 Supp. 21-5911(d)(1). And this court has previously stated that "[c]ustody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained." *State v. Pritchett*, 222 Kan. 719, 720, 567 P.2d 886 (1977).

These definitions are consistent with how Black's Law Dictionary defines "custody" to be "[t]he care and control of a thing or person for inspection, preservation, or security." And it notes further that there are different types of custody, such as physical custody, which is "[c]ustody of a person (such as an arrestee) whose freedom is directly controlled and limited;" and "constructive custody," which is "[c]ustody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control." Black's Law Dictionary 441, 1263 (9th ed. 2009).

At the time Burnett filed his UMDDA request, he was serving a 44-month sentence for a felony conviction in McPherson County. But rather than being transported to a KDOC facility, Burnett was held in the McPherson County jail for disposition of a separate, unrelated matter. He was later transported to a KDOC facility on March 12, 2007. On the face of Burnett's UMDDA request, he indicates that he is delivering a copy of the UMDDA request to the "Director [Secretary] of KDOC," rather than to a warden because he was not at that time housed in a KDOC facility. But most importantly, the sentencing journal for Burnett's 44-month sentence states that the district court ordered "the Sheriff or a designee transport [Burnett] *to the custody of the Secretary of Corrections*." (Emphasis added.)

We conclude that while Burnett was physically located in the McPherson County Jail, he was also in KDOC custody in accordance with the district court's order. And for purposes of K.S.A. 22-4302, the KDOC Secretary was an official having custody over him. Accordingly, Burnett properly delivered his UMDDA request. His failure to deliver a copy to a McPherson County jail official was not a procedural bar to reaching the merits of his motion to dismiss. The Court of Appeals erred in holding otherwise.

## Certified or Registered Mail

The panel also held that there was no evidence Burnett sent his request by registered or certified mail. *Burnett*, 2009 WL 5206220, at *2. But there is no such requirement on the prisoner's part under the UMDDA. See K.S.A. 22-4301(a). Rather, a prisoner is required simply to deliver the request to the warden, superintendent, or other official having custody of that prisoner. Once the request is in hand, that official's statutory duty is triggered to mail the request, along with a certificate containing information regarding the prisoner's sentence, to the appropriate court and county attorney. K.S.A. 22-4302.

We have no record that the KDOC secretary carried out this duty, but this cannot prejudice Burnett since it was not an obligation imposed on him. See *Pierson*, 210 Kan. at 373; *Ellis*, 208 Kan. at 61-62. We hold that Burnett was not required to mail his UMDDA request by certified mail. We hold further that any failure by prison officials to have done so is not a deficiency that prevents us from reaching the merits of Burnett's claim that his statutory speedy trial rights were violated. To the extent the Court of Appeals held otherwise, that holding is erroneous.

Having found no procedural bar to addressing the merits of Burnett's appeal, we consider his substantive arguments next.

## Burnett's Motion to Dismiss

In denying Burnett's motion to dismiss for failure to bring his case to trial within 180 days, the district court stated:

" 'Well, the [UMDDA] pursuant to K.S.A. 22-4401 states in part: "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution and whenever during the continuance of the term of imprisonment there is pending in other party state [*sic*] any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he should be brought to trial within 180 days." And at the time he filed this, and that was February 7, 2007, *he was not serving a sentence*. And the [UMDDA] does not apply. So the motion is dismissed.' " (Emphasis added.)

We recognize initially that the district court incorrectly cited language from the Interstate Agreement on Detainers, codified at K.S.A. 22-4401 *et seq.*, and not the UMDDA. But we have previ-

ously held that a district court's referral to the incorrect detainer statute is immaterial to a speedy trial analysis under a detainer statute. See *State v. Dolack*, 216 Kan. at 633-634.

In Burnett's case, the only remaining inquiry was whether he was imprisoned at the time he filed his request, which he certainly was because he was in the McPherson County Jail. See *State v. Huff*, 277 Kan. 195, 205, 83 P.3d 206 (2004); see also *State v. Cole*, 238 Kan. 370, 373, 710 P.2d 25 (1985) ("penal institution" refers to institutions under the supervisions of state and local authorities, including county jails). The UMDDA provides that anyone imprisoned in *either* a penal institution *or* correctional institution may invoke its provisions. K.S.A. 22-4301. We hold that at the time he filed his UMDDA request Burnett was imprisoned in a penal institution and properly invoked the UMDDA's speedy trial provision. It was error for the district court to hold otherwise. This holding takes us to the heart of Burnett's speedy trial claim.

Under K.S.A. 22-4303, if all other conditions are met, the passage of the 180-day statutory period must be treated as conclusive of undue delay unless: (1) the court for good cause in open court grants additional time; (2) the parties stipulate to a continuance; or (3) a continuance is granted on notice to the attorney of record and opportunity to be heard. From the record, we are able to determine most of the relevant timeline.

Burnett was sentenced to 44 months in prison in McPherson Case I on November 27, 2006, and the journal entry reflects he was remanded to the custody of the Secretary of Corrections at that time. He filed his UMDDA request on February 7, 2007. Five weeks later, on March 12, 2007, Burnett was transferred from the McPherson County Jail to a KDOC facility. After several continuances for reasons ranging from the inability to transport Burnett to miscommunication between counsel, Burnett was ultimately bound over for trial at a preliminary hearing on May 14, 2007. The court initially scheduled a jury trial for August 13, 2007, which was more than 180 days after Burnett filed his UMDDA request. On August 9, 2007, Burnett filed the motion to dismiss under the UMDDA. The hearing on Burnett's motion to dismiss was held on August 24, 2007. After his motion to dismiss was denied, the trial

was rescheduled, and a jury convicted Burnett on February 25, 2008.

What is not readily apparent from either the record or the district court's ruling on Burnett's motion to dismiss is whether, in open court, the district court ever found good cause to set trial outside the 180-day jurisdictional period. Similarly, it is not apparent from the record whether the continuance from August 13, 2007, until October 30, 2007, was made upon motion with notice and opportunity to be heard, by stipulation, or if the district court, in open court, found good cause to extend the time period.

Had any of these circumstances occurred, then an argument might have been made that one of the exceptions to K.S.A. 22-4303 existed. But as noted above, the State has never claimed any of the continuances extended the 180-day period. It also conceded during oral argument that if this court found Burnett complied with the statute on February 7, 2007, then he was not brought to trial within the statutory speed trial requirements of the statute.

The correct starting date for the UMDDA's 180-day period is February 7, 2007, when the Reno County District Court filed Burnett's request. And since there is no claim that other statutory conditions were met to delay the calculation, the passage of the statutory period must be treated as conclusive of undue delay. *Stanphill*, 206 Kan. at 616. The Reno County District Court was without jurisdiction to hold a jury trial and sentence Burnett after that 180 days expired. It erred in denying Burnett's motion to dismiss.

The judgment of the Court of Appeals affirming the district court's denial of the motion to dismiss is reversed. Burnett's conviction is reversed, and his sentence vacated.