NOT DESIGNATED FOR PUBLICATION

No. 117,294

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DMITRI WOODS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed April 13, 2018. Reversed and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

PER CURIAM: Dmitri Woods appeals his bench trial conviction for two counts of battery of a state correctional officer, raising four issues. We agree the State failed to have the trial within 180 days of Woods exercising his right to be tried under the Uniform Mandatory Disposition of Detainers Act (UMDDA), and, as a result, the district court lost jurisdiction to try him. With this ruling, we decline to address the other three issues. We reverse Woods' convictions and remand for the district court to dismiss the charges with prejudice.

1

On August 26, 2008, the State charged Dmitri Woods with two counts of battery of a state correctional officer in Reno County. The district court issued an arrest warrant with a bond in the amount of $50,000. The Sheriff's Office received the arrest warrant on August 28, 2008. The District Attorney's Office received Woods' request for disposition of his charges, pursuant to the detainer against him, on February 11, 2016. Woods' first appearance was initially scheduled for March 2, 2016, but was rescheduled and occurred on April 6, 2016.

On April 25, 2016, Woods filed a motion to dismiss the case arguing the State failed to commence the action within the five-year statute of limitations. The district court held a hearing on the motion to dismiss and the detainer form was admitted. The KDOC detainer form reflects the handwritten printed name "Woods," the numbers "84519," which is Woods' KDOC number, and indicates it was successfully faxed to the KDOC on August 28, 2008. At the hearing, Woods' counsel argued there was no evidence presented that this was Woods' signature. The district court denied Woods' motion to dismiss, stating the form with two witnesses was sufficient to reflect he was notified of the charges as reflected on the form.

A preliminary hearing occurred on July 6, 2016, and Woods entered a plea of not guilty.

The State filed a motion to commence Woods' jury trial by August 10, 2016. In the motion, the State claimed it did not receive a request from Woods for the resolution of the case against him until February 11, 2016. The motion also alleged it did not appear the Reno County District Court Clerk received a copy of the detainer because it was not on file with the court.

The district court set a pretrial hearing for July 22, 2016, and set the jury trial for August 2, 2016. Additionally, the district court set a deadline requiring all pretrial motions be filed by 5 p.m. on July 27, 2016.

On July 28, 2016, Woods filed a "Motion to Dismiss for Due Process, Speedy Trial, Lack of Prosecution, and Prosecutorial Misconduct." In his motion, Woods argued the case should be dismissed because (1) the State violated his constitutional speedy trial rights; (2) the prosecution failed to prosecute the case under K.S.A. 2015 Supp. 60-241(b); and (3) the State mishandled his notice under the UMDDA. Specifically, on the last point, Woods argued the State was lying to the court about when they received his application for disposition of the complaint against him. On August 1, 2016, after a short hearing, the district court continued the trial that was set for August 2, 2016, until an evidentiary hearing on the motions could be set and the issues raised by the motions resolved.

The State responded to Woods' motion regarding speedy trial, failure to prosecute, and allegations of prosecutorial error. First, the State argued there was no constitutional violation of Woods' speedy trial rights because any delay in the case was attributable to Woods. Specifically, the State argued that under the UMDDA, once a defendant who is incarcerated in prison is advised of a detainer, it is the responsibility of the defendant to file a request for the disposition of the detainer to begin the prosecution procedure. The State argued Woods waited to request disposition of the case and any delay was his error, not the State's. Second, the State argued K.S.A. 2015 Supp. 60-241(b) controls civil litigation—not criminal proceedings—and, therefore, was inapplicable to the case at hand. Finally, the State denied it improperly handled Woods' detainer paperwork. It asserted Woods, not the State, had the duty to see the request for the resolution of his detainer was correctly and timely served on the court.

The district court heard argument on Woods' motions on September 8, 2016. The court denied Woods' motion to dismiss, noting the filing of the detainer was sufficient to show exercise of due diligence by the prosecution in pursuing the case against Woods. It further held the name "Woods" and the inmate number was sufficient enough to constitute receipt of the detainer and, therefore, Woods was aware of the detainer in 2008.

The district court denied Woods' motion regarding his constitutional speedy trial rights, failure to prosecute, and prosecutorial error. The district court held Woods indicated his intent to invoke his rights under the UMDDA even if the district court had not filed his notice in the court file. The court then found "absolutely zero evidence of prosecutorial [error]." The court next found the 180-day statutory time limit for bringing Woods to trial was followed since the trial was originally set for August 2, 2016, within the 180-day limitation running on August 9, 2016. The court also found the continuance of the August 2, 2016 jury trial was attributable to Woods because of the late filing of this motions to dismiss and the need to address those motions before the matter went to trial. Finally, the district court ruled Woods' constitutional speedy trial rights were not violated because the State had done what was required to lodge its detainer and Woods failed to request disposition of this detainer until 2016. The matter was set for trial on November 8, 2016.

On November 8, 2016, the district court held a bench trial on stipulated facts. Upon being duly advised of his right to a jury trial, Woods waived it. The district court found Woods guilty of two counts of battery of a state correctional officer based on the stipulation of facts. Woods now raises four arguments on appeal:

- His convictions must be reversed because he was not tried within the time allotted by the statute of limitations;
- His constitutional right to a speedy trial was violated;

4

- He was not tried within the requirements of the UMDDA; and

- The "[m]ishandling of this case by multiple law enforcement agencies should result in a reversal" of his convictions.

We will address Woods' third issue on appeal first because it is dispositive, and we decline to address the remaining issues raised.

*Was Woods timely tried under the UMDDA?*

Woods argues he was not tried within the time requirements of the UMDDA, K.S.A. 22-4301 et seq. Specifically, he contends his statutory right to a speedy trial under the UMDDA was violated because he was not brought to trial within 180 days of his request for the final disposition of the detainer.

Whether a defendant's statutory right to a speedy trial was violated is a question of law subject to de novo review. *State v. Breedlove*, 295 Kan. 481, 486, 286 P.3d 1123 (2012). To resolve the issue, we must interpret and apply the UMDDA. Statutory interpretation and the determination of jurisdiction involves questions of law over which this court exercises unlimited review. *State v. Alonzo*, 296 Kan. 1052, 1054, 297 P.3d 300 (2013). Additionally, "this court construes criminal statutes strictly in favor of the defendant, and any reasonable doubt about a statute's meaning must be decided in favor of the accused. But this is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative intent." *State v. Burnett*, 297 Kan. 447, 451, 301 P.3d 698 (2013) (citing *State v. Marks*, 297 Kan. 131, 298 P.3d 1102 [2013]).

The UMDDA is an intrastate act to control the procedure under which an inmate of a Kansas penal or correctional institution may require disposition of any criminal charges pending within the state. 297 Kan. at 452-53; *State v. Brooks*, 206 Kan. 418, 421, 479 P.2d 893 (1971). The UMDDA's "aim is to prevent indefinite suspension of pending

5

criminal charges while a prisoner is incarcerated on other charges, and it seeks to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time." *Burnett*, 297 Kan. at 453. "Under the UMDDA, 'the passage of the statutory period . . . must be treated as conclusive of undue delay if all other conditions are met.' But substantial compliance with the UMDDA is sufficient to invoke its protections. [Citations omitted.]" 297 Kan. at 453.

Several portions of the UMDDA are relevant to this appeal. K.S.A. 2015 Supp. 22-4301 provides:

"(a) Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing addressed to the court in which the indictment, information, motion to revoke probation or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

"(b) The warden, superintendent or other official having custody of prisoners shall promptly inform each prisoner in writing of the source and nature of any untried indictment, information, motion to revoke probation or complaint against such prisoner of which the warden, superintendent or other official has knowledge or notice, and of such prisoner's right to make a request for final disposition thereof.

"(c) Failure of the warden, superintendent or other official to inform a prisoner, as required by this section, within one year after a detainer has been filed at the institution shall entitle such prisoner to a final dismissal of the indictment, information, motion to revoke probation or complaint with prejudice."

K.S.A. 22-4302 provides:

"The request shall be delivered to the warden, superintendent or other officials having custody of the prisoner, who shall forthwith:
"(a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time

6

earned, the time of parole eligibility of the prisoner, and any decisions of the state board of probation and parole relating to the prisoner;

"(b) for crimes committed on or after July 1, 1993, certify the length of time served on the prison portion of the sentence, any good time earned and the projected release date for the commencement of the postrelease supervision term; and

"(c) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed."

Finally, K.S.A. 2015 Supp. 22-4303:

"Within 180 days after the receipt of the request and certificate by the court and county attorney or within such additional time as the court for good cause shown in open court may grant, the prisoner or such prisoner's counsel being present, the indictment, information or complaint shall be brought to trial or the motion to revoke probation shall be brought for a hearing; but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for such prisoner to be heard. If, after such a request, the indictment, information or complaint is not brought to trial within that period, or the motion to revoke probation is not brought for a hearing within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information, motion to revoke probation or complaint be of any further force or effect, and the court shall dismiss it with prejudice."

Clearly, K.S.A. 2015 Supp. 22-4303 mandates once a request for final disposition of a detainer is made by the prisoner, he or she shall be brought to trial on the complaint reflected by the detainer within 180 days of the court's and county attorney's receipt of the request. Our Supreme Court noted in *Burnett* this statute provides three ways to extend the 180-day time limit: "(1) the court for good cause in open court grants additional time; (2) the parties stipulate to a continuance; or (3) a continuance is granted on notice to the attorney of record and opportunity to be heard." 297 Kan. at 458. "This statutory right is founded on legislative policy, as distinguished from constitutional

grounds." 297 Kan. at 453 (citing *State v. Stanphill*, 206 Kan. 612, 616, 481 P.2d 998 [1971]).

Here, Woods sent his request for final disposition of the untried complaint via certified mail to the Reno County Attorney's Office and the Reno County District Court Clerk. The County Attorney's Office acknowledged it received the request on February 11, 2016. The district court does not have a copy of the request, as the county's internal policy for handling mail from the Hutchinson Correctional Facility appears to be problematic. However, Woods substantially complied with the requirements of the UMDDA by sending his request to the district court via certified mail, which was signed for by an employee of Reno County. Woods did his part to comply with the UMDDA and he cannot be faulted for any error on the part of the county or the district court for its apparent mishandling of certified mail. Thus, Woods is covered by the UMDDA, and his charges must have been brought to trial either within 180 days from the receipt of his request or "within such additional time as the court for good cause shown in open court may grant." K.S.A. 2015 Supp. 22-4303.

The delay between Woods' request for final disposition of his untried complaint (February 11, 2016) and his trial (November 8, 2016) was 271 days—obviously in excess of the statutorily mandated maximum of 180 days. Therefore, the only way the district court can maintain jurisdiction past the 180-day limit is to grant the additional time "for good cause shown in open court" with Woods or his counsel present, the parties stipulating to the extension, or the extension is granted on notice with an opportunity to be heard. K.S.A. 2015 Supp. 22-4303. Neither of the last two circumstances are applicable here.

The State argues the additional delay is directly attributable to Woods. The State is partially correct. Woods filed extensive motions just before the trial set for August 2,

8

2016. Thus, we must calculate whether the time should be charged to the State or Woods. The record reflects:

- On February 11, 2016, Woods' request for disposition was filed.
- Woods' first appearance was April 6, 2016.
- Woods' preliminary hearing and arraignment were held on July 6, 2016.
- On July 8, 2016, the State filed a motion asking for the trial to be set before August 10, 2016, as the 180-day time limit would expire.
- Trial was set by the district court for August 2, 2016.
- Woods filed extensive motions to dismiss the charges on July 28, 2016.
- The district court denied the pending motions on September 8, 2016, and September 23, 2016.
- At the September 23, 2016 hearing, the district court set the trial for November 8, 2016, because it was the "nearest date the court [had] on its docket in which a matter is not set."

From these timelines we see 168 days was chargeable to the State from February 11, 2016, through July 28, 2016. Thus, on July 28, 2016, the State had 12 days remaining to timely set the trial. The time Woods filed his motions to dismiss on July 28, 2016, to the time the court reasonably resolved the motions was properly chargeable to Woods. The motions were timely resolved by the district court on September 23, 2016. On September 23, 2016, the clock started to run against the State again.

At the September 23, 2016 hearing, the district court made no specific finding on the record that good cause permitted setting the trial past the 180-day cutoff. At the September 23 hearing, the district court did say November 8, 2016, was the first date on its calendar a matter was not set. However, the district court failed to state on the record it was finding good cause existed because of its crowded calendar to set the trial on

9

November 8, 2016. Additionally, the State failed to acknowledge on the record the need to obtain an extension of the 180-day time limit before it expired. Accordingly, as of October 5, 2016, the district court was deprived of jurisdiction under the UMDDA. K.S.A. 2015 Supp. 22-4303 clearly provides when the 180-day time limit is not met "no court of this state shall any longer have jurisdiction thereof" and "the court shall dismiss [the complaint or information] with prejudice." See *Burnett*, 297 Kan. at 459; *State v. Rodriguez*, 254 Kan. 768, Syl. ¶ 3, 869 P.2d 631 (1994); *State v. Diederich*, 50 Kan. App. 2d 345, 349-50, 326 P.3d 409 (2014); *State v. Watson*, 39 Kan. App. 2d 923, Syl. ¶ 2, 186 P.3d 812 (2008).

Under the UMDDA, a statute we strictly construe in the defendant's favor, the district court lost jurisdiction to try Woods on October 5, 2016, on these charges. We reverse Woods' convictions and remand to the district court with directions to dismiss the complaint against Woods with prejudice.

Reversed and remanded with directions.